# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | | |
|---|---|---|
| **Tynez Knight, by his next** | : | **Case No.** |
| **Best Friend, Toral Knight** | : | |
| **4079 Beechcreek Road** | : | **U.S. District** |
| **Whitehall, Ohio 43213** | : | |
| | : | |
| **And** | : | **Judge** |
| | : | |
| **Jordyn Brooks, by her next** | : | **Magistrate Judge** |
| **Best Friend, Laura Brooks** | : | |
| **5015 Etna Road** | : | |
| **Whitehall, Ohio 43213** | : | |
| | : | **COMPLAINT FOR MONETARY** |
| **And** | : | |
| | : | **EQUITABLE AND DECLARATORY** |
| **Toral Knight** | : | |
| **4079 Beechcreek Road** | : | **RELIEF** |
| **Whitehall, Ohio 43213** | : | |
| | : | |
| **And** | : | |
| | : | |
| **Laura Brooks** | : | |
| **5015 Etna Road** | : | |
| **Whitehall, Ohio 43213,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **Vs.** | : | |
| | : | |
| **Whitehall City School** | : | |
| **District-Board of Education** | : | |
| **625 S. Yearling Rd.** | : | |
| **Whitehall, Ohio 43213** | : | |
| | : | |
| **And** | : | |
| | : | |
| **The City Of Whitehall** | : | |
| **360 S. Yearling Road** | : | |
| **Whitehall, Ohio 43213** | : | |
| | : | |

**And** :
:
**Christopher M. Litostansky** :
**1031 Bernhard Road** :
**Columbus, Ohio 43227,** :
:
    **Defendants.** :


## INTRODUCTION

Now come the Plaintiffs, Tynez Knight, a minor, by and through his mother and next best friend, Toral Knight; Jordyn Brooks, a minor, by and through her mother and next best friend, Laura Brooks;  Toral Knight; and Laura Brooks, by and through counsel, Byron L. Potts, and pursuant to the Federal Rules of Civil Procedure, Rule 15, respectfully state the following:


## JURISDICTION

1. Each of the paragraphs set forth in this Complaint incorporates all of the other paragraphs without repetitious restatement.

2. This is a civil action for declaratory judgment and for compensatory and punitive monetary damages for violation of rights secured under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400et. seq., Section 504 of the Rehabilitation Act of 1973, ("Rehabilitation Act"), 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq.,42 U.S.C. 1983, the Fourth, and Fourteenth Amendments to, and other provisions to the United States Constitution and comparable provisions of the Ohio Constitution, as well as rights secured under the laws of the Ohio Constitution.

3. This action is brought to redress the injuries to the liberty and person to the Plaintiffs Tynez Knight and Jordyn Brooks arising from the breach of the Defendants' duty to protect the Plaintiffs from false imprisonment, assault, and battery which occurred while the Plaintiff was in the custody and control of employees of the Whitehall City School District-Board of Education.

4. This Court has jurisdiction over Plaintiffs' claims arising pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400et. seq., Section 504 of the Rehabilitation Act of 1973, (" Rehabilitation Act"), 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12101, et. seq., the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 under the aforestated statutes and Constitutional provisions pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 as these claims arise under the Constitution and laws of the United States. This Court has pendent jurisdiction over the Ohio common law claims as these claims arise from the same occurrences and facts.

5. The jurisdiction of this court is also invoked pursuant to 28 U.S.C. 2201 and 2202 authorizing any court of the United States in a case of actual controversy within its jurisdiction, the authority to declare rights and other legal relations of any interested party seeking such declaration and to grant further necessary and proper relief based upon a declaration judgment on decree.

6. The amount in controversy exceeds $150,000.00, excluding interest and cost.

7. Cost and attorney fees are sought pursuant to 42 U.S.C. 1988.

8. This action properly lies in the judicial district because, at all times material to this civil action, Plaintiff and Defendants were and still are residents and citizens of Franklin County, Ohio; the United States of America, and of this court's judicial district.

9. Venue is also proper with this court for the reason that Plaintiff's claims for relief and causes of action against the Defendants set forth herein all arose in Franklin County, Ohio and all acts and/or omissions of the Defendants upon which Plaintiff claims for relief, causes of action and this civil action against the Defendant are based occurred in Franklin County, Ohio.

## PARTIES

10. Plaintiffs are and have been, at all times relevant, residents of the City of Whitehall, Franklin County, Ohio.

11. Defendant Whitehall City School District Board of Education is a government entity duly authorized and operating under the laws of Ohio. They are or were, at all times

3

relevant, the employer, master, and principal of the Defendant Christopher M. Litostansky.

12. Defendant Christopher M. Litostansky was, at all times relevant, employed as a bus driver by the Whitehall City School District.

## FACTS

13. Minor Plaintiff, Tynez Knight, was born on 7/26/2003 and is currently 11 years old.

14. Over the course of his childhood, Tynez Knight has presented symptoms of, and has been diagnosed with Autism. At all times pertinent hereto, he took therapeutic medications to help control symptoms of these conditions.

15. Plaintiffs allege that at all times pertinent hereto, defendants were aware of Tynez Knight's conditions.

16. Minor Plaintiff, Jordyn Brooks, was born on 7/24/2008, and is currently six years old.

17. Both minor Plaintiffs have ridden the bus driven by Defendant Litostansky for the current school year. In the past, Defendant Litostansky has required minor Plaintiff, Jordyn Brooks, to hold her arms in the air for the entirety of the bus ride, as punishment for falling asleep on the bus. This bus route takes an approximately an hour and a half to two hour to complete.

18. On or about October 10, 2014, Tynez Knight was picked up from his home; and Jordyn Brooks was picked up at the bus stop located at the Whitehall Senior Citizen Center, by a school bus owned by Defendant Whitehall City School District-Board of Education (hereinafter "Whitehall City SDBE")  and operated by Defendant Christopher M. Litostansky, a bus driver employed by Whitehall City SDBE, to Madison Christian Elementary School (hereinafter "Madison Christian"), a private school located in Groveport, Ohio, and to The Learning Spectrum, an autism scholarship program housed in the Canal Winchester school district.

19. Tynez was brought to the bus by his mother, Plaintiff Toral Knight at about 7:30 A.M. Toral Knight accompanied Tynez onto the bus and proceeded to secure Tynez into a harness jacket attached to the bus seat located in the special needs section. This

harness does not restrict his arms or legs in any manner and this section is located behind the bus driver's seat.

20.  Jordyn was seated in the in the first seat on the passenger or right side of the bus.

21. On or about October 10, 2014, both Plaintiffs were riding on the bus driven by Defendant Litostansky. While on the bus, Defendant Christopher M. Litostansky had required Plaintiff Jordyn Brooks to hold her hands in the air at approximately 7:30 a.m. Subsequently, at approximately 7:46 P.M., Defendant Christopher M. Litostansky was seen striking Plaintiff, Jordyn Brooks in the face with his hand.

22. At about 7:48 A.M., Plaintiff Tynez Knight was seen pulling Plaintiff Jordyn Brooks' hair and pushing her with his foot.  After his incident,  Defendant Christopher M. Litostansky, while transporting the Plaintiffs and the rest of the students on the bus, stopped by his own residence at approximately 8:00 a.m., proceeded to go inside of his house and returns to the bus at approximately 8:04 a.m., with a strap. The stopping by Defendant Litostansky's home was a deviation from the normal bus route that Litostansky took to deliver the children to their respective schools. Defendant Christopher M. Litostansky bound Plaintiff Tynez Knight's feet together and strapped them to the seat.

23. On or about October 13, 2014, Tynez Knight and Jordyn Brooks, were again picked up from their respective stops by a school bus operated by Defendant Christopher M. Litostansky.

24. During this ride to school, Tynez reached his leg across the aisle and pushed Jordyn with his foot, moving Jordyn from her original position to the other side of the seat, near the window. After Tynez stopped, Jordyn moved back to her original position. Subsequently, Tynez playfully grabbed a hold of the hood of Jordyn's jacket and pulls her closer to him. Tynez then gently grabbed a hold of her hair. During these interactions, Jordyn was smiling.

25. Defendant Litostansky  then walked back to Tynez and Jordyn. Defendant Litostansky, again bound Tynez's legs together and fastened them under his seat. As Defendant Litostansky began to move to the front of the bus, when Tynez grabbed Jordyn's hood again and pulled her closer to him. Defendant Litostansky walked back

5

to the two children and again grabbed Jordyn by the arm and threw her across her seat with enough force that Jordyn's head struck the window and made an audible thud.

26.  Upon returning to his driver's seat, Defendant Litostansky chastised Jordyn, stating that they are trying to "teach him not to do that and you are smiling about it." For the remainder of route, which was approximately 40 (forty) minutes, Tynez was strapped to his seat.

27. Following this situation, Jordyn began to fall asleep in her seat. Upon seeing this Defendant Litostansky grabbed an umbrella from behind his seat, taking one hand off the steering wheel, and began to strike Jordyn on the bridge of the nose with the end of the umbrella. Over the course of the route, Defendant Litostansky struck Jordyn on the side of the head 6 (six) additional times.

28. Following this incident, Defendant Litostansky has Jordyn come up to him, while he is driving, and has her sit on his lap. Defendant Litostansky then places his arm around her, strokes her hair and states that "he's sorry". Subsequently, Defendant Litostansky kisses Jordyn twice on the head and then sends Jordyn back to her seat. He proceeds to hold her hand for several minutes before turning and looking at her to say "How does that feel?"

29. When Jordyn was finally dropped off at Madison Christian, she was witnessed crying and an employee of Madison Christian noted that Jordyn's face and eyes were red, and specifically there was a red mark on the top right of her head. Jordyn relayed to the employee that she was struck by the bus driver. Jordyn was then sent to the nurse's office where she repeated the same account.

30. On October 13, 2014, Defendant Christopher M. Litostansky was placed upon an administrative suspension.

31. On October 14, 2014, after Jordyn had been complaining of headaches since the incident on the bus, she was taken to Children's Hospital to be examined. Jordyn was assessed with head trauma and released that same evening.

32. On October 23, 2014,  Plaintiff Laura Brooks met with her family physician and was diagnosed with Post Traumatic Stress Syndrome as a result of the October 13 incident involving her daughter. Consequently, Laura Brooks began counseling sessions with a psychologist at the Matrix Psychological Services located at 2 Easton Oval, Suite

4500, Columbus, Ohio 43219. Laura Brooks was placed on Family and Medical Leave Act leave from work until December 8, 2014.

33. On October 28, 2014, Plaintiff, Jordyn Brooks, was seen by her primary care physician and diagnosed with a concussion and Post Traumatic Stress Syndrome. Additionally, she was referred to see a child psychologist.

34. On October 30, 2014, Plaintiff, Jordyn Brooks, suffered a severe headache accompanied with nausea while at school. Laura Brooks promptly took her to their primary care physician for treatment. Jordyn Brooks was prescribed with additional medication.

35. On November 14, 2014, the Whitehall City School Board of Education accepted Defendant Christopher M. Litostansky's resignation.

### FIRST CLAIM— CIVIL RIGHTS VIOLATIONS UNDER 42 SECTION 1983

36. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

37. The Defendant Christopher M. Litostansky was acting in his official capacity as an employee of the Whitehall City School District.

38. The Defendant Christopher M. Litostansky violated the Plaintiff's rights under 42 U.S.C. §1983 of the Civil Rights Act by violating the Plaintiff's rights guaranteed by the Constitution, which include the Plaintiff's Fourteenth Amendment right of Due Process, Equal Protection, and the Plaintiff's Fourth (4th) Amendment right against unreasonable and unlawful seizure of his person by causing Tynez Knight to be strapped down and restrained unnecessarily to his seat on the bus for an extended period of time.

39. As a proximate result of the Defendant Christopher M. Litostansky's actions, the Plaintiff has suffered compensatory damages, pain and suffering intentional infliction of emotional distress as well as other damages.

40. The Plaintiffs should be granted punitive damages because of the Defendant Christopher M. Litostansky acted with reckless disregard for federal law.

### SECOND CLAIM: CIVIL ASSAULT AGAINST MINOR PLAINTIFF TYNEZ KNIGHT

41. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

42. Defendant Christopher M. Litostansky intentionally, without authority or consent, caused reasonable apprehension by Tynez Knight of an immediate or offensive contact with his person.

43. As a direct and approximate result of the actions of Defendant Christopher M. Litostansky, Tynez Knight suffered physical and emotional injuries, including by not limited to physical pain and suffering, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, and anxiety, and incurred medical expenses, to an amount that will be shown at trial.

44. Plaintiff suffered compensatory damages as well as other damages.

45. Plaintiffs should receive punitive damages as a result of Defendant Christopher M. Litostansky intentional acts towards Plaintiffs.


**THIRD CLAIM: CIVIL ASSAULT AGAINST PLAINTIFF JORDYN BROOKS**


46. Plaintiff incorporates the forgoing paragraphs as if fully rewritten herein

47. Defendant Christopher M. Litostansky intentionally, without authority or consent, caused reasonable apprehension by Jordyn Brooks of an immediate or offensive contact with her person

48. As a direct and approximate result of the actions of Defendant Christopher M. Litostansky, Jordyn Brooks suffered physical and emotional injuries, including by not limited to physical pain and suffering, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, and anxiety, and incurred medical expenses, to an amount that will be shown at trial.

49. Plaintiff suffered compensatory damages as well as other damages.

50. Plaintiff should receive punitive damages as a result of Defendant Christopher M. Litostansky intentional acts towards Plaintiffs.


**FORTH CLAIM: CIVIL BATTERY AGAINST PLAINTIFF TYNEZ KNIGHT**

51. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

52. Defendant Christopher M. Litostansky, without authority or consent, harmed and offensively touched the Plaintiff, Tynez Knight.

53. As a direct and approximate result of the actions of Defendant Christopher M. Litostansky, Tynez Knight suffered physical and emotional injuries, including by not limited to physical pain and suffering, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, and anxiety, and incurred medical expenses, to an amount that will be shown at trial.

54. Plaintiff suffered compensatory damages as well as other damages.

55. Plaintiff should receive punitive damages as a result of Defendant Christopher M. Litostansky's intentional acts towards Plaintiffs.

## FIFTH CLAIM: CIVIL BATTERY AGAINST PLAINTIFF JORDYN BROOKS

56. Plaintiff incorporate the foregoing paragraphs as if fully rewritten herein.

57. Defendant Christopher M. Litostansky, without authority or consent, harmed and offensively touched the Plaintiff, Jordyn Brooks.

58. As a direct and approximate result of the actions of Defendant Christopher M. Litostansky, Jordyn Brooks suffered physical and emotional injuries, including by not limited to physical pain and suffering, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, and anxiety, and incurred medical expenses, to an amount that will be shown at trial.

59. Plaintiff suffered compensatory damages as well as other damages.

60. Plaintiff should receive punitive damages as a result of Defendant Christopher M. Litostansky's intentional acts towards Plaintiffs.

## SIXTH CLAIM: FALSE IMPRISONMENT/UNLAWFUL RESTRAINT BY DEFENDANT CHRISTOPHER M. LITOSTANSKY

61. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

62. Defendant Christopher M. Litostansky unlawfully restrained and controlled Plaintiff Tynez Knight's physical liberty without lawful privilege or authority by binding his legs together and strapping them to his seat for an extended period of time, and thereby falsely imprisoned Tynez Knight. Furthermore, this action threatened his

physical safety as a passenger on a school bus because as a passenger he would be unable to escape harm's way.

63. As the direct and proximate result of the acts of Defendant Christopher M. Litostansky, Plaintiff Tynez Knight has suffered physical and emotional trauma.

64. Defendant Christopher M. Litostansky is directly and individually liable for said injuries and losses; and Whitehall City SDBE is liable for all said injuries for all of said injuries under the doctrine of respondeat superior.

65. The conduct of Defendant Christopher M. Litostansky , in intentionally confining minor Plaintiff, Tynez Knight in a bus Seat, by way of binding together his legs and then strapping them to the seat,  and preventing him from being able to free himself of his own volition constitutes extreme and outrageous conduct, which conduct was committed in willful, wanton, reckless, and total disregard of the rights, safety, and well being of minor Plaintiff Tynez Knight, thereby entitling Plaintiffs to punitive damages, and claim is made therefore.


## SEVENTH CLAIM— INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/ NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS  AGAINST TYNEZ KNIGHT AND TORAL KNIGHT

66. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

67. On or about October 10 and 13, 2014, the Defendant Christopher M. Litostansky abused his position as a bus driver by intentionally, and without consent or justification,  binding Plaintiff Tynez Knight's legs and strapping Tynez Knight to the seat for an extended period of time.

68. The Defendant Christopher M. Litostansky acts of using excessive force that is, binding together Tynez Knight's legs and then strapping them to the seat in front of him was extreme and outrageous, and exceeds the bound of decency and tolerability in a civilized community

69. The extreme and outrageous conduct of Defendant Christopher M. Litostansky was intentional and/or reckless.

70. The acts of the Defendant Christopher M. Litostansky extreme and outrageous conduct was the proximate cause of serious psychological and emotional distress, not only to Tynez Knight, but also to his mother, Toral Knight, who observed this abuse of her vulnerable son through the video recording taken by the on-board camera.

71. The Plaintiffs, Tynez Knight and Toral Knight, mental anguish was serious and of a nature that no reasonable person could be expected to endure. Furthermore, a reasonable person, of normal mental condition, would be unable to face satisfactorily the serious mental anguish and emotional distress caused by the Defendant Christopher M. Litostansky.

72. Plaintiff Tynez Knight now has nightmares stemming from the incidents on October 10 and 13, 2014.

73. Plaintiff Toral Knight has been prescribed medication for anxiety and mental anguish experienced due to the actions of Defendant Litostansky.

74. The Defendant Christopher M. Litostansky has caused permanent injuries by his act on the Plaintiff Tynez Knight and the Plaintiff will incur further expenses as a proximate result of the Defendant Christopher M. Litostansky actions.

75. The Defendant Christopher M. Litostansky, intentional infliction of emotional distress on the Plaintiffs was malicious, intentional, and an abuse of his power as a bus driver. Therefore, the Plaintiffs are entitled to compensatory damages, punitive damages, and all other damages the Court deems proper and necessary.

76. The acts of the Defendant Christopher M. Litostansky, if not intentional, were negligent and the proximate cause of the damages suffered by Plaintiffs.  Therefore, Plaintiffs are entitled to compensatory damages, punitive damages, and all other damages the Court deems proper and necessary.

**EIGHTH CLAIM:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/ NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST JORDYN BROOKS AND LAURA BROOKS**

77. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

78. On or about October 10 and 13, 2014, the Defendant Christopher M. Litostansky abused his position as a bus driver by intentionally, and without consent or

justification, tossing Plaintiff Jordyn Brook with enough force that she struck her head on the bus window, striking Jordyn Brooks in the head with the end of an umbrella at least six times, and forcing Jordyn Brooks to sit on his lap while he was driving, in addition to stroking her hair and kissing her on the head.

79. Defendant Christopher M. Litostansky acts of using excessive force and inappropriate actions is extreme and outrageous, and exceeds the bound of decency and tolerability in a civilized community.

80. The extreme and outrageous conduct of Defendant Christopher M. Litostansky was intentional and/or reckless.

81. The acts of the Defendant Christopher M. Litostansky extreme and outrageous conduct was the proximate cause of serious psychological and emotional distress, not only to Jordyn Brooks, but also to her mother, Laura Brooks, who observed this abuse of her vulnerable daughter through the video recording taken by the on-board camera

82. The Plaintiff's mental anguish was serious and of a nature that no reasonable person could be expected to endure. Furthermore, a reasonable person, of normal mental condition, would be unable to face satisfactorily the serious mental anguish and emotional distress caused by the Defendant Christopher M. Litostansky

83. The Plaintiff, Jordyn Brooks now has nightmares stemming from the incidents on October 10 and 13, 2014, and further has been diagnosed with Post Traumatic Stress Syndrome.

84. Plaintiff Laura Brooks has been diagnosed with Post Traumatic Stress Syndrome as a result of the incidents involving her daughter. Furthermore, Plaintiff Laura Brooks began counseling sessions with a psychologist at the Matrix Psychological Services.

85. The Defendant Christopher M. Litostansky have caused permanent injuries caused by their act on the Plaintiff, and the Plaintiffs will incur further expenses as a proximate result of the Defendant Christopher M. Litostansky actions.

86. The Defendant Christopher M. Litostansky, intentional infliction of emotional distress on the Plaintiffs was malicious, intentional, and an abuse of his power as a bus driver. Therefore, the Plaintiffs are entitled to compensatory damages, punitive damages, and all other damages the Court deems proper and necessary.

87. The acts of the Defendant Christopher M. Litostansky, if not intentional, were negligent and the proximate cause of the damages suffered by Plaintiffs.  Therefore, Plaintiffs are entitled to compensatory damages, punitive damages, and all other damages the Court deems proper and necessary.

## NINTH CLAIM—NEGLIGENCE

88. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

89. On or about October 10 and 13, 2014, Defendant Christopher M. Litostansky was employed by the Whitehall City SDBE as a bus driver, and consequently had a duty to the children he was transporting, including Plaintiffs Tynez Knight and Jordyn Brooks, to provide a safe transport from their respective homes to their respective schools.

90. On or about October 10 and 13, 2014, Defendant Christopher M. Litostansky, negligently, carelessly, and recklessly breached his duty to safely transport the children to their respective schools.

91. The negligence, carelessness, and recklessness of Defendant Christopher M. Litostansky consisted of, *inter alia*:

    a.  failing to exercise reasonable care to protect minors, Tynez Knight and Jordyn Brooks, against physical harm

    b.  failing to act as a reasonably prudent bus driver would under the circumstances.

    c.  acting without due regard for the rights, safety, and well being of minor Plaintiffs, Tynez Knight and Jordyn Brooks;

    d.  Failing to keep his autistic students, including minor Tynez Knight, safe in his custody, care, and control;

92. As a direct and proximate result of the negligence, carelessness, and recklessness of Defendant Christopher M. Litostansky, minor Plaintiffs, Tynez Knight and Jordyn Brooks have endured, and will continue to endure physical pain, psychological and emotional suffering, including, but not limited to post-traumatic stress syndrome,

93. As a further direct and proximate result of Defendant Christopher M. Litostansky's negligence, carelessness, and recklessness, minor Plaintiffs, Tynez Knight and Jordyn Brooks have suffered and will continue to suffer a loss of life's pleasures.

94. The negligent, careless, and reckless conduct of Defendant Christopher M. Litostansky constitutes extreme and outrageous conduct, which conduct was committed in willful, wanton, reckless, and total disregard to the rights, safety, and well being of minor Plaintiffs Tynez Knight and Jordyn Brooks, entitling Plaintiffs to an award of punitive damages, and claim is made therefore.

## TENTH CLAIM: NEGLIGENT HIRING, SUPERVISION, AND RETENTION OF DEFENDANT CHRISTOPHER M. LITOSTANSKY

95. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

96. Defendants Whitehall City SBDE and the City of Whitehall, by their wrongful acts and acquiescence, failed to properly employ, train, discipline, and/or supervise Defendant Christopher M. Litostansky.

97. Defendant Whitehall City SBDE failed to correct or to prevent the wrongful conduct of Defendant Christopher M. Litostansky as has been alleged, and by those actions, in total disregard for the rights, safety, and well being of minor Plaintiffs Tynez Knight and Jordyn Brooks.

98. The foregoing acts were committed, reasonably anticipated and foreseen, and in disregard of that result, minor Plaintiffs, Tynez Knight and Jordyn Brooks, would suffer serious and severe damages.

99. As a direct and proximate result of the Defendants' negligent hiring, supervision, and retention of Defendant Christopher M. Litostansky, minors Plaintiffs, Tynez Knight and Jordyn Brooks have endured, and will continue to endure physical pain, psychological and emotional suffering, including but not limited to post-traumatic stress syndrome, fear, and developmental delays.

## ELEVENTH CLIAM: VIOLATION OF THE INDIVIDUALS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973

100.    Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

101.    The Individuals with Disabilities Act, 20 U.S.C. § 1400, et. seq., (IDEA) and the regulations related thereto, 34 C.F.R. Section 300.1 et. seq., require that responsible educational agencies provide disabled children with "free appropriate public education" (FAPE) and appropriate due process procedures to effectuate those rights. Under the IDEA, a school district, including the instant defendant, is required to identify every disabled child in its jurisdiction, 34 C.F.R. Section 300.125(a).

102.    The statute and regulations contemplate the implementation of an interrelated set of services through which a child identified as having special needs disability is evaluated, his or her qualifications are determined, and an appropriate program with necessary "related services", including but not limited to transportation, is provided to such students.

103.    The vehicle for the implementation is the Individual Education Program (IEP) plan. The IEP is to be reasonably comprehensive to permit the subject child to obtain a "meaningful education benefit" and "child progress" in the least restrictive environment given the child's special needs.

104.    Under and pursuant to 20 U.S.C. Section 1415 and 34 C.F.R. Section 300.511, the rights set out in the IDEA are enforceable in the Federal Courts.

105.    Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (Section 504), and the regulations promulgated thereunder, 34 C.F.R. Part 104, prohibits discrimination against persons with disabilities. Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under any program or activity receiving federal financial assistance.

106.    Under Section 504, school districts are required to provide appropriate, safe and secure transportation to students with disabilities, under and pursuant to the IDEA requirements, including but not limited to providing transportation as "related service(s)," "travel training," "assistive technology," "full educational opportunity," "a

15

full variety of educational programs and services," "nonacademic and extracurricular services and activities," and "physical education."

107. The Whitehall City School District is a recipient of federal funds within the definition and intent of Section 504.

108. Specifically under the IDEA, transportation is a "related service," which school districts are required to provide after an appropriate evaluation of a child's need for such transportation services. All transportation services provided are to be "safe, adequate and appropriate" to the child's educational needs. 20 U.S.C. Section 1410(22) and 34 C.F.R. Section 300.24(a) [8] and (b)(15). Other regulations provide that transportation services are included as a "non-academic service" which is ancillary to meet the child's educational goals. 34 C.F.R. 300.306.

109. Section 504 similarly requires appropriate transportation services to meet the special educational needs of a child with disabilities. 34 C.F.R. Section 104.33(b) and (c); 104.37(a)(2).

110. Defendant Whitehall City SBDE had a duty under the law to provide Tynez Knight with an appropriate education, including appropriate ancillary services such as safe transportation.

111. Toral Knight and Tynez Knight relied on defendants to provide a safe educational environment for Tynez Knight, including safe transportation.

112. The Defendant Whitehall City SBDE knew or should have known that Defendant Christopher M. Litostansky was not trained to provide safe transportation of a child with Autism, and thus did not provide safe transportation for Tynez Knight.

113. The Defendant Whitehall City SBDE's actions proximately caused a violation of the rights guaranteed to Tynez Knight under IDEA and Section 504.

114. Minor Plaintiff, Tynez Knight, was injured as a result of these violations in a manner set out hereinbefore.

115. Defendants, Whitehall City SBDE are responsible for the conduct, actions and omissions of its employees and representatives under the theory of respondeat superior.

16

## <u>TWELFTH CLAIM: VIOLATION OF THE AMERICAN WITH DISABILITIES ACT</u>

116.    Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

117.    Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131et seq. and the regulations promulgated thereunder, 28 C.F.R. Part 35, governing state and local government entities, protects persons from discrimination on the basis of disability by public entities. The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

118.    Under and pursuant to the Americans with Disabilities Act, appropriate and nondiscriminatory transportation services must be provided by public agencies in a safe, nondiscriminatory, efficient and dignified manner. 42 U.S.C. Sections 12131 to 12150.

119.    The conduct and practices of Defendants including,  but not limited to, the use of excessive restraints on Tynez Knight, which was not inflicted upon children without disabilities while riding the public school bus, was discriminatory and wholly undignified,  in violation the American With Disabilities Act.

120.    Defendants, Whitehall City SBDE are responsible for the conduct, actions and omissions of its employees and representatives under the theory of respondeat superior.

121.    As a direct and proximate result of the actions of Defendants, Whitehall City SBDE and Christopher M. Litostansky, Plaintiff, Tynez Knight,  sustained physical and emotional injuries, including but not limited to physical pain and suffering, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, and anxiety, and incurred medical expenses, all of which in an amount to be proven at trial.

122.    As a result of the conduct and actions of  Defendants, Whitehall City SBDE and Christopher M. Litostansky, Tynez Knight was forced to hire an attorney to represent him in this matter and he should be awarded attorneys' fees and costs.

WHEREFORE, Plaintiffs request judgment against the Defendants in an amount greater than $2,500,000 (Two million five hundred thousand dollars):  $1,000,000 for Plaintiff Tynez Knight, and $1,500,000 for Plaintiff Jordyn Brooks in compensatory damages, punitive damages, pain and suffering, attorney's fees, and such further compensation that will fully compensate the Plaintiffs.

<u>JURY DEMAND</u>

Plaintiffs, by and through their undersigned attorney, demand a trial by a jury.

Respectfully submitted,
Byron L. Potts & Co., L.P.A.


/s/ Byron L. Potts
Byron L. Potts   (0040246)
538 East Rich Street,
Columbus, Ohio 43215
614-228-2154 (phone)
614-228-2155 (fax)
byronpotts@msn.com
*Attorney for Plaintiffs*

18